The last case this morning is 19-4158, Honie v. Powell. Counsel, if you would, please make sure you're ready to argue. Good morning. My name is Eric Zuckerman. I represent the accountant, Mr. Honie. Good morning, Mr. Zuckerman. With the court's permission, I will try to reserve five minutes for rebuttal. It is clearly established that there are a narrow set of rights already enumerated by the Supreme Court that are fundamental and reserved to the defendant alone. In Jones v. Barnes, the Supreme Court found that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as whether to plead guilty, waive a jury, testify in his or her own behalf, or take appeal. It is also clearly established that for an ineffective assistance of counsel claim related to the waiver of one of these fundamental rights, the correct prejudice standard focuses on the outcome of the proceeding resulting in the forfeiture of the right. In other words, whether the defendant can show that there is a reasonable probability that he would have exercised the right, but for counsel's deficient performance. It is established by what cases? In Hill v. Lockhart, the Supreme Court addressed a situation for ineffective assistance of counsel related to guilty pleas and determined what is the correct prejudice standard to apply. The court explains that the two-part Strickland analysis applied to this claim, and that the deficient performance prong of Strickland is the same, but that the prejudice prong focuses on the pretrial process that resulted in the default of the right, that the defendant needed to show that he would not have pled guilty if not for his counsel's deficient performance. In Roe v. Flores-Ortega, the Supreme Court applied the Hill prejudice analysis to a claim of ineffective assistance of counsel for failure to file an appeal. Importantly, the court held that it broke no new ground to apply the Hill prejudice analysis to a claim involving direct appeal because, like a guilty plea, like the decision whether to plead guilty or go to trial, the decision whether to file an appeal is a decision that is reserved to the defendant alone. The court held this despite no prior law applying Hill to a claim that did not involve ineffective assistance of counsel related to a guilty plea. It is this language in Flores-Ortega that clearly establishes that the Hill prejudice analysis applies to the rights enumerated in Jones v. Barnes that are reserved to the defendant alone. And did you cite at all Flores-Ortega to the Utah Supreme Court or to the district court for that matter? Well, we did not cite either in the Utah Supreme Court or in the district court the Flores-Ortega case. Is that a problem since on page 16, I think, of your brief, you suggest that it's actually the combination of Hill, Flores-Ortega, and Lafler that clearly establish your right? Well, you haven't told anybody before now that that's exactly your position. Your position has been based on Hill alone. It's not a problem, and I'll address exhaustion and then the preservation issue in order. This claim was properly raised in state court. In Mr. Honey's opening brief, he argued that the Hill prejudice analysis applies to this claim. There's no need to— But Hill only appears in the reply brief in state court. That's correct. Now, the way that it occurred in state court was that Honey argued in his opening brief that he was prejudiced, that he could demonstrate prejudice as a result of counsel's deficient performance. Using the Strickland standard, which we're now moving away from, right? In his opening brief related to this, he just asserted that he could demonstrate prejudice. Citing Strickland. Well, if you will, please, I think that Hill, Roe, and Lafley, all three of them, in fact, are nothing but a refinement of the Strickland standard. They don't set a new standard. They merely state that in the respective types of cases involved there, that Strickland has to be read procedurally because otherwise it makes no bloody sense. How could you possibly prove that a sentence by a jury would be led to a different result if there was no jury? And that's the point of those cases, is it not? Judge Lucero, I believe that's absolutely correct. And in fact, the point of those cases, a reasonable probability of a different outcome, and that different outcome could be would you have had a different sentencing outcome in this case if you had had a jury as opposed to the judge ruling? That's different than the standard you're asking for now, right? Well, correct, but Strickland uses the language, the result of the proceeding would have been different. So the question is what is the proceeding? And when you're talking about a waiver of a fundamental right that is reserved for the defendant alone, the proceeding is the proceeding that resulted in the waiver of the right, not the proceeding that resulted in conviction at trial or the sentence being imposed. So we believe that this is the Strickland standard. Hill, Lackler, and Flores-Ortega are merely applications of it. But when these cases are read together, there's no question that this standard applies to claims of jury waiver and all of the enumerated rights. But, I mean, before now, there would have been nobody who would have noticed they should read these three cases together. So standing here saying now that when you read these three cases together, you get the epiphany that Hill applies to these rights that are fundamental rights that are reserved to the defendant. Well, that's not an argument that was made to the Utah Supreme Court. They didn't have the benefit of being able to evaluate that argument. Well, I mean, we cited Hill, which is what we believe is the fundamental basis for this claim. Well, you're telling me two other cases make it clear what you're arguing. So it wouldn't be inference. The inference of that is it wasn't clear before these two other cases that Hill stood for this proposition. But it is permitted in federal court to put forward additional authority that supports one's claim. The state court needs to have an opportunity to weigh in on the nature of the claim. The state court needs to have notice of what the claim is. And the claim in state court was that the Hill prejudice analysis applied to this claim. And the state court had full and fair opportunity to hear that claim and adjudicate it. And there were five briefs. But doesn't Utah procedural rule say that you waive arguments that are raised in your reply brief? But there was no finding by the Utah court that we did waive that argument. Furthermore, the state had an – so the way that this occurred is that it wasn't until the state argued that the Strickland prejudice – we could not meet prejudice under Strickland – that we then responded, well, no, it's a Hill prejudice analysis that this court should be looking at. The state had an opportunity to ask the court for a serve reply, which is permitted in Utah Supreme Court and happens regularly. And the state chose not to do that. The state court made no finding that this claim was defaulted or not properly preserved. And importantly, the state has never before raised exhaustion. The state has never argued in district court that this claim was not exhausted. The state has not argued in COA briefing before this court that this claim was not exhausted. It was not until COA was granted on this claim that the state raised an exhaustion defense. Yes, and under habeas rules, that is – that doesn't – I mean under statute, unless there is an explicit waiver of exhaustion, that doesn't get you anywhere, does it? Well, I do think it's important to point out that the district court found that this claim was properly exhausted and before it. And that's docket 135 of 24. And in litigation over exhaustion, the court's ruling is docket 103. We believe that a citation to Hill was sufficient. In the Utah Supreme Court, you can see cases such as Baxwell v. Hillary, which talk about what is required for exhaustion. We articulated the standard that the court should have applied, and the court ruled that it did not apply that standard. Let me just be clear on one point, then. Is it your premise in light of your saying that it was sufficient in spite of Hill, is it your premise that Hill itself, standing alone, clearly established the right that you say was violated? We believe that Hill can clearly establish and does clearly establish the right that this applies to fundamental rights that are very similar, that follow the same category. Because this is all very murky to me, this clearly established law thing. And now you're saying Hill alone is enough, but you're also saying the three of them combined, which I understand. You say one, two, three, and the next number is four. But I think the lead case is Kerry v. Musladin, and you would have had two of the concurring judges who agreed with you in that case, which was conduct within the courtroom being prejudicial to the defendant. And what you had was spectators with buttons with the victim's picture, and the court looked to its precedent of clearly established law, and it found two troopers sitting behind the defendant, and it distinguished those. It said, those don't apply here. They're clearly established for that principle of government-initiated conduct in a courtroom, but not private citizens, so you don't have clearly established law. How does that same situation not apply here, and that none of those three cases talk about juries? Certainly. Well, an identical fact pattern is not required for law to be established. It's more than that, though. Obviously, if it had been government-initiated conduct, the court would have said, good enough, now the facts are different, but we'll address that. You've given us clearly established law. It's not just facts that are different. It's what happened. It's a plea versus a jury determination. A plea ends the case. An appeal ends the case. But choosing a jury or a judge to sentence you does not end the case. I think that it is important to look to the Supreme Court's language in Flores-Ortega, where it says that applying this prejudice standard breaks no new ground. And its explanation for why it doesn't break no new ground to apply the failed prejudice analysis to a direct appeal claim is because, like the decision whether to appeal, the decision whether to plead guilty rested with the defendant. So you need to look at the direct – you used the key word here, direct appeal. The fact that the Supreme Court on direct appeal can apply its precedent to a different factual context is not – is it the same standard that we hold, as a matter of federalism, state courts to do, too, when evaluating what the Supreme Court requires. I think it's important to look at the language in Flores-Ortega, where it says that applying this prejudice standard breaks no new ground to apply the failed prejudice analysis to a direct appeal claim is because, like the decision whether to appeal, the decision whether to plead guilty rested with the defendant. And its explanation for why it doesn't break no new ground to apply the failed prejudice analysis to a direct appeal claim is because, like the decision whether to plead guilty rested with the defendant. Counsel, if I may, please. Am I correct that both Roe v. Flores and Lafleur v. Cooper cite, as authority, Hill v. Lockhart? That's correct. So any first-year law clerk working for the Utah Supreme Court would have cite-checked Hill v. Lockhart, subsequently cite-checked, and popped out Roe v. Flores and Lafleur v. Cooper, correct? I think that's right. So my question is, at what level of specificity do we demand that the state courts, that at the state court, a defendant has to cite every application of a case before the defendant can rely at the federal level on the very case, the seminal case, cited to the court? It's not required. What's required is that the state court is aware of the federal nature of the claim. And as Honey argued in state court before the Utah Supreme Court, it would have been a violation of the Sixth Amendment not to apply the failed prejudice analysis. I'm sorry. Go ahead, Judge Lister. Honey explained that he may only show that, but for his counsel's deficient performance, he would not have waived his right to retain it. And how does our House v. Hatch case, which interpreted Kerry v. Muslivan and other cases that talks about what is clearly established law, how does it apply to your argument? The House says clearly established law is generally directly on point authority from the Supreme Court, which would mean same factual context or cases where the legal principle has been extended to that factual context. You don't have that here. I don't think we need an extension. I think that this is a mere application of what the court explained in Flores-Ortega, which is that you're dealing with a right that is fundamental and reserved to the defendant alone. The appropriate prejudice analysis, and that's why the court in Flores-Ortega held that it broke no new ground and used that exact language. You didn't cite Flores-Ortega to the Utah Supreme Court. I mean, you're either relying strictly on Hill or you're not. If you're relying on Hill, why aren't you going to have to tell us that Hill – it's natural from Hill. I get your point about the extension, the Supreme Court saying that this was no great leap for us to apply the Hills principle. Well, yes, okay, on direct appeal, that's fine. But the principle would be would it have been unreasonable for the Utah Supreme Court to read Hill standing alone to not countenance this claim? Is that a fair statement of what our law requires? And if not, tell me why. I do not believe that the law requires us to cite Flores-Ortega in state court. I think what the law requires for exhaustion purposes is that we explain the standard that should be applied and cite to federal case law that explains what that standard is. Obviously, it would have been preferable for us to have cited Flores-Ortega in state court, but I believe that under Vassar v. Hillary, it is not required for us to cite all of the cases that support the argument that we are making. The fundamental nature of the argument is that the Hill prejudice analysis applies. Let me suggest this now. I'm not – right now, what I'm talking about is not exhaustion. That's a question whether you fairly presented this Hill argument. That's not what I'm talking about right now. What I'm talking about now is whether it – either the law would have been clearly established such that there is clearly established law, which House and House talk about, or even if Hill would have been clearly established law. I believe that it would be unreasonable. I don't believe that we need to rely on Hill alone. I think that when the state court is applying a rule, the question is whether there is clearly established Supreme Court law that demonstrates that that rule must be applied. I think it may be an open question. We believe that Hill does establish that, but I believe that – and as the court in Vickers held, there's no question after Hill, Flores-Ortega, and Laffer that this standard applies. And Flores-Ortega and Laffer were cases that were cited by the district court in this case and not by you, right? And they were cited in connection with Vickers, right? That's correct. Okay. Well, again, why isn't that a preservation issue? And this preservation issue is wavered by not making the same sort of Flores-Ortega-Laffer combined argument that you're making here. You didn't make that argument in the district court. If I may, please, that is the question, I think. And what argument did you make to the Utah Supreme Court to which you cited Hill? What was your argument? Our argument to the Utah Supreme Court was that it was contrary to – that it was a violation of constitutional law to apply the traditional Strickland prejudice analysis, and that the prejudice analysis that should be applied is that established by Hill, which is that the defendant need only show that but for counsel's deficient performance, he would have exercised the right. And that is precisely the argument that you're making to us, correct? That's absolutely correct. Is it a fair statement that the only difference is that here you cite the refinement of that principle that is articulated in Flores-Ortega and Laffer? That is our position. And to answer Judge Holmes' preservation question, this court has held that an issue is preserved if the district court has been adequately alerted to the issue or perhaps even responded to the issue, and that's in the United States v. Garcia on the 10th Circuit in 2019. But they responded to it. You didn't cite it. And it's not necessarily clear that the same sort of preservation rules and direct appeals exist in habeas context. I mean, you're required to make your position known in your petition. And so your position is I take it that by virtue of the discussion of the district court, that's enough. Well, that's correct. We believe that the district court squarely addressed this issue by citations to Hill and Laffer and to Vickers, which follows the analysis that we put forth to this court today. So the district court had a whole unfair opportunity to weigh in on this issue, and it did. And the district court's analysis was incorrect. The district court said Vickers was not clearly established law, but that's not the question. The question was whether Hill, Laffer, and Flores-Ortega was clearly established law. Vickers was merely an application of those three cases. So we do believe that we have done what is required under habeas law to exhaust this issue before the Utah Supreme Court. And we believe that it is properly before this court because the district court did address exactly the argument that we made today. So is your argument, then, that the Utah Supreme Court's application of Strickland as applied in this new context, the outcome being do I want a judge or do I want a jury instead of do I get death or do I get life? Is your argument that the Utah Supreme Court, by choosing the more primitive or more inclusive real Strickland standard for outcome, that its determination was contrary to the clearly established law? That is absolutely our argument. The Utah Supreme Court's application requiring Mr. Honey to demonstrate that the result of the sentencing proceeding, a reasonable probability that the result of the sentencing proceeding would have been different is contrary to clearly established law. All right. You're not on the unreasonable application prong. You're on contrary to. Is that right or no? Well, I think that that's correct as well. It's contrary to both Strickland and it's contrary to Hill and Flores-Ortega and Lackler. As we explained, as Tony explained in the state court, the correct prejudice analysis to apply was that that was explained in Hill. So your argument is not that the Utah Supreme Court should have applied it, applied these cases and reach new ground because your ground necessarily follows from those cases. Instead, your argument is those cases establish that ground and so contrary to. That's correct. So you're not saying unreasonable application. You're not saying and let's be clear here because an unreasonable application could involve a natural extension of precedent. And so if you're – you can have you're contrary to, but you could – but are you saying as well, and I don't know whether these things are mutually exclusive, are you saying as well that by reaching the result they did, they did not extend Strickland in the way that was natural and logical, i.e., Lackler told us is natural and logical, to extend, I mean, the Hill principle to this context? Well, it didn't cite to Hill in its decision despite the fact that it was clearly aware of it. So, I mean, it's not a question of misapplying Hill. It merely didn't apply Hill at all. Well, the Strickland – you know, Strickland is the overarching thing here. Hill extends from Strickland, and as per your argument, Lackler and these others extend that same principle. So what I'm saying is if you establish that you've got this body of law there, are you saying that it's – I just – you know, whatever your argument is, it is. I'm just trying to get clear what your response is to Judge Phillips. Are you saying – are you relying on the clearly the contrary to prong, or are you saying both apply or what? We're saying both apply. The rest of the time is reserved as requested. Ms. Holiak, is that the correct pronunciation? Holiak. Holiak. Like the tree. Like the college. Yes. I always say like the college, but spelled like the tree. Melissa Holiak for the State of Utah. May it please the Court, Your Honor. In this case, Your Honors, his appeal fails because even before we reach the merits, he cannot overcome some significant hurdles, including jurisdiction that his claim is never fairly presented and is procedurally defaulted. His claim is unpreserved since it was not argued in the district court. And if the court does reach the merits, Mr. Hone's argument fails because it was not clearly established, the prejudice standard that he seeks now. When were Flores Ortega and Loeffler decided? What year? I read them this morning and didn't pay attention. Yes. So, Loeffler was decided in 2012. Flores Ortega was in 2000. And Mr. Hone's conviction was final in 2002. And what year was the case argued to the Utah Supreme Court? The case was decided in 2014. All right. Now, because this is quite important in my mind, what do you understand the argument at the Utah Supreme Court to have been regarding Hill? In the Utah Supreme Court, the opening brief of Mr. Hone set forth the Strickland standard and then simply argued that here he would have picked a judge over a jury. I'm sorry. I apologize. A jury over a judge. The problem is in his opening brief, he makes no mention that there was a different legal standard that should apply. There's not even a plain statement that here's Strickland, but you should apply a different legal standard. There's just no plain statement to that effect. And the idea of exhaustion is you need to get the controlling principle in front of the court, give the state court the opportunity to apply the law. All right. In your response, was that followed then by the citation to Hill or when was Hill first cited? Hill was first cited in the reply. Oh, well, our opposition cited Hill in a footnote. And what we did, what we said there in our opposition in the state court brief was that Mr. Hone did not argue anything other than Strickland. And the only other Strickland prejudice standard we know of is Hill, but that doesn't apply here. Mr. Hone now argues, well, that is new argument that you put in front of the state court. And so I had an opportunity to reply to it in my reply briefing. The problem with that is that that is not what Utah law says. Under the case State v. Kruger, and the cite there is 6P31116, the state court, Utah Supreme Court said when an appellee such as us in the state court proceedings points out that an argument was not made, that's not new matter that then opens the door for the appellant to argue in the reply brief. And the same situation was here. We argued there's no other standard applied, so you don't now get to argue a different standard. Well, let me stop you there, because I'm on the same point that Judge Lucero is. And I'm going to ask it this way, not what cases were cited, but instead, what was the substance of the argument? Did he say before the Utah court, my argument is that I should have been allowed to choose a jury. My counsel deprived me of that. And if I would have been allowed to prove a jury, that jury would not have convicted me to death. Because that's one thing. But if instead his argument is, I should have been allowed to pick a jury and stop, then that seems to leave Hill very much on the table, at least for me. Well, and I would disagree, Your Honor, on both points. I think on the first point being, the only law he cited was Strickland in his opening brief. So that was the only legal principle he put in front of the court. I'm not asking what law he cited. I'm asking what the argument was and really what he was not seeking. He didn't say, I've been deprived in this fashion, and what it cost me was that jury would not have imposed a death penalty on me. In other words, a true Strickland as opposed to a Hill sort of a relief. And I can pull up the briefing right now, but from what I recall is the statement was, I would have picked a jury over a judge if I had known the difference. And that was the extent of the statement. But that is why our opposition briefing said, well, that's all very well and good, but that doesn't get you to the prejudice. Well, to Judge Phillips' point, I mean, if his argument was, I'm prejudiced because I would have picked a jury over a judge, that is Hill. I mean, that is not – I mean, if the substance of the argument in the opening brief had been, see Strickland, I would have been prejudiced because I would not have been sentenced to death, then that would have been the Strickland standard. But if he said, I'm prejudiced because I would not have picked the judge, why isn't that in substance anyway the Hill standard? That is – certainly that plain statement was not included in his opening brief. At most he said, I was prejudiced, full stop, and I would have picked a judge over a jury. That statement – Well, he did argue that, right, that he would have picked a judge over a – a jury over a judge? Sure, and that is precisely why we said, well, that's not enough under Strickland. You argued Strickland, and now your statement that you would have picked someone over the other is not enough. Was the case orally argued after the brief briefing? Yes, it was. And was the point that Mr. Zuckerman makes before us argued orally to the Utah Supreme Court? The different prejudice standards? Yeah, the Hill standard as opposed to the pure Strickland standard. That I do not know. I don't know if that was argued in oral argument. But what I do know is that the only principles in the briefing – the only controlling principles in the briefing were Strickland and the opening brief. And then when Hill appeared later – Did you put on blinders and not look at the decisions in Flores, Ortega, and Cooper, that is to say, presume ignorance on our part about this – these Supreme Court cases in order to get to the right result? In this – in this instance? In this case. In this case because he only cited Hill in his reply brief in the state court? Is that – I tell this to my clerks all the time. Why do you answer a question with a question? My question – I want to make sure I'm answering the right question. I love the way you explain your spelling, by the way. It seems to me that by asking me a question, you don't answer mine. And my question is, in order for us to decide this case correctly under the way you argue it, do we have to put blinders on and pretend we are ignorant of the decisions in Flores, Ortega, v. Cooper? No, you do not. And I think that was – In other words, what you would have us do is say, here's the law, but we're going to ignore it. And the reason we're going to ignore it is that even though the Utah Supreme Court heard the principal argument in this case and was aware of Hill, but didn't apparently research Hill long enough to see its application in these cases, that that's the base reason we're going to forgive all these substantive law errors and proceed on a purely procedural basis? Is that the basis on which the death penalty should be applied? Because now you're getting me into the territory where I feel decidedly uncomfortable. And I understand. No, I don't think they – I think, as you said, a clerk can go and research the law, but the clerk didn't have to research Hill at all because Hill was put in the reply brief. It was not a procedural context that was proper, and the Utah Supreme Court did not need to look at it at all. And they could have – even if they had discretion to look at it, that's not fair presentation. The idea is, are we getting the correct legal principle, even Honey's purported principle of what he thinks the prejudice standard should apply? Are we getting in front of the state court? And here we're not. He argued a different legal prejudice standard, and then he applied it – the facts to that standard without any – without even a plain statement that said, yes, I know Strickland applied, but you should apply something differently. We want it to be different here. There was nothing like that. There wasn't even a simple statement that said, I was prejudiced because I did not pick – I could not pick the jury over the judge. That simple statement was not there. The controlling statement was not in front of the Utah state court to even make the decision on whether this new different prejudice standard was clearly established. So, no, they weren't limited, but they didn't even have to go – they had no – they had no requirement to go look at those cases at all. It was in the reply brief, and they did not have to look at it under Utah state law. And I think there – this also brings up the problem with these theories is he had – his theory has really evolved over time. It was just Hill, and now it's the three working together that we have this general standard. And there's some real tension between those theories that causes these problems with exhaustion and also within the clearly established realm. It's not the same theory. It's just additional support. And I would disagree on that. I think there – it's one – well, and it showed up in two different ways in his briefing. On the one hand, yes, he – if we could point to a general standard that was an on-point, narrowly construed legal rule in Hill that we could look to, like Strickland. Strickland has the very broad language that has been applied in tens of thousands of cases. If there was that one general standard that could then be applied, then yes, if you're citing additional authorities, then you're just refining the argument. That's correct. But he also – Mr. Honey also makes – has this theory that it's those three working together. We're looking at the common denominator of those cases, this decision left to defendant, that is pulling this general standard together. Fundamental rights left to the defendant require the need for this process-based Hill prejudice standard, right? Yes. And that comes from the three cases, not just – he's not saying, hey, look, there's Hill. Apply Hill here. If you don't apply Hill, you violate clearly established law. He's saying the common denominator of those three cases gives you clearly established law. What if I flat don't agree with him on that point? And I think that Hill is the seminal case and the other two are just applications. Well, he loses under both ways because, for example, if Hill is the seminal case, there is no general standard here, as your Honor noted, in House v. Hatch. What we need is controlling, on-point holding, and if that controlling was applied to a different factual context, the Supreme Court must have expressly extended it to this similar factual context, which it has not. It has not done that for jury sentencing waiver. So in his reply brief at page 6, Mr. Hone says Hill was extended to Loeffler and then extended to – on floor 38 and then to Loeffler. No such extension occurred here. If there was a general standard that – to the extent there is any general standard we could uphold from Hill, it was certainly not extended to this similar factual context and only extended in those other two circumstances. But even the general standard he's trying to pull from those three cases, it falls apart because the idea that there's a decision left to defendants. For example – Reading the cases, it seems to me that Hill announces a different principle that not even announces. It decides a different principle, namely that when you get to these plea bargain agreements and a selection of a jury over a judge, that these are almost structural, the way a trial proceeds, rather than the traditional old-fashioned Strickland analysis, which is a different result. Because as I said earlier in my question, I mean, I don't know how you possibly could prove a different result by a jury over a judge other than rank speculation, and the courts aren't going to do that. So I guess I'm speaking my heart here, but what bothers me about this case is that in order to decide it in your favor, I have to, as I said before, put on blinders and ignore Supreme Court law. And that's really troublesome to me. I'm not sure you need to put on blinders and ignore Supreme Court law, because even the rule that they pulled that he's trying to cobble together from these three cases, it doesn't even – it falls apart in many respects. The idea that a decision left to the defendant means that we now change the prejudice standard is incorrect. And one example of that is a decision left to the defendant is the ability to testify, the right to testify. But Supreme Court precedent has applied straightforward Strickland in those circumstances, for example, under the Nixey Whitehead case. And so that general standard that he's trying to cobble together fails in that respect. It also fails if the idea that it has to be a fundamental right, as we've seen in Fourth Amendment suppression cases or even ability to provide mitigation evidence. But those analogies really don't work, do they? I mean, those aren't reserved to the defendant. Those are lawyer strategic calls. I mean, the law has treated them as such, has it not? Hence the ineffective insistence of counsel as it relates to putting on mitigating evidence and whether to file a suppression motion. I mean, those aren't fundamental rights reserved to the defendant, are they? Well, that's my point, because before, history has evolved. It was at first just a fundamental right, which doesn't apply. But now for changing it to rights to the defendant, it still doesn't apply because we have other instances where straight Strickland prejudice standard is applied. In other words, there's no general... Even if your Nix case works, these other two contexts are not rights reserved to the defendant, are they? Whether to file a suppression motion or not is a fundamental right reserved to the defendant? No, it is not. Okay. And yes, but the question over mitigation evidence, I think it might be a question over whether that might be a right for the defendant. I don't think so. But okay, we'll figure that out. But let me just make sure I understand very clearly here. We have the whole question of whether they exhaust it. Okay, that's one bucket. Let's assume they get past the exhaustion and they're in a situation where you say, we presented the basic construct of Hill prejudice. In other words, you know, it was enough that I was prejudiced because I would not have chosen a judge. Okay, so now they're here in federal court. Why would there not be clearly established law? That's what I want to understand. Either under Hill or under this latest configuration that they have of cobbled together the three. Why is there not clearly established law that the Utah Supreme Court violated? Under either theory, under just Hill, there is no general standard under Hill that says this needs to apply in these situations. Hill applied it to the plea bargaining situation, to the loss of the plea ability to go to trial situation. That is not analogous here. As House V. Hatch said, you need on point holdings in a similar factual context. We don't have that same similar factual context here. And whether the Supreme Court would extend is not the question before this court. Has it expressly extended to it here? And it has not. It has later extended similar reasoning to lawful as Mr. Honey argues to Loeffler and Flores-Ortega. So then under the the other theory that it's the three working together that pulls this general standard of a decision left to defendants. That, again, doesn't work because there are situations where there are there is a decision left to the defendant and straight circling applies. And I think the difference is when we're looking at, and Judge Lucero I think pointed out this earlier, is it's really about what the forfeiture of proceedings here. And in Hill, he was he was giving up the ability to go to trial. Forfeiture of an entire proceeding in Loeffler and in Flores-Ortega. Forfeiting the ability for an entire new proceeding of his appeal. So basically confirming the finality of his conviction. The defendant was giving that up, was sealing his fate. Okay, I am agreeing to plead guilty. I'm no longer I'm giving up this other proceeding. I am forfeiting the right to appeal. My conviction's final. Giving that up. Here there was no such forfeiture of proceedings. Mr. Honey didn't say I'm going to I agree to a death sentence and I'm giving up the right for a sentencing proceeding. That sentencing proceeding went forward. There was no forfeiture of proceedings. It was not similar to Hill in that respect or to Loeffler and to Flores-Ortega. And don't we have cases, at least one iteration of Hooks, in which we said that clearly established law does not involve pulling general principles out of Supreme Court cases and saying this is the law. I mean, and so isn't that what we're doing here? Correct, Your Honor. That's exactly right. And I think they, Mr. Honey said to Marshall v. Rogers saying that this could be done. But that's not what Marshall v. Rogers said. Marshall v. Rogers said you could have a general standard that applies to numerous, multiple factual situations. Well, I don't follow you there because on Musladeen, you have a general standard, which is in-court participation by out-of-court actors can deprive a defendant of a fair trial. And the general rule there is what controls. That doesn't extend out to private actors, but it extends to everything that is government-initiated, even though you don't have a case right on point, right? In other words, it's not enough to be in the ballpark with your general standard. You've got to be behind the plate. But behind the plate's a lot of seeds. Sure. Sure. And that's why, like, Strickland, for example, can be applied to thousands of cases. It's very similar. If you are trying to just challenge your conviction at trial. But this is a very different situation. It's different than a right to appeal, a right to a jury trial. In fact, the right to a jury sentence is not even a fundamental right. It's a statutory right in Utah. Just so I understand your position for sure, are you saying that those cases, Hill and Flores and Laffer, they clearly establish that if you have a defendant decision that is dispositive, whether like an appeal, whether like a plea, as opposed to who do I want to sentence me, that the law is clearly established for those, even if it's not a plea or an appeal? Maybe we lost her. Paul, you may want to stop the clock so we figure out what's going on. I'll give her a minute or two and see if she rejoins, and then I'll try to reach out to her.  Judge, it looks like you're muted. I said, given the situation, let's take a three-minute recess while you try to either reach her or reconnect to her, and then if you can't, we'll come back and figure out what we do. That sounds good. Let's make it five. The court will be in recess for five minutes. The court is now in recess for a five-minute break. Thank you. Thank you. Thank you. Thank you. I'm not sure what happened. No worries. No worries. The judges are in the middle of a five-minute break. We've got about just under three minutes left, and then we'll bring them back in, and I think then we'll resume arguments. Okay. Yeah, so just hang out for about three minutes, and then we'll get started. Sounds good. Great. Thank you both. I'm going to put you both back in the waiting room, so just FYI. Thank you. Thank you. Thank you. Thank you. Were you able to reach her back? I was, Judge. She was able to reconnect. She's not sure what happened. I think maybe her Wi-Fi just cut out for a brief moment, and it was enough to mess up her connection. Oh, good. Great. I'm happy that you were able to reach her. Yesterday, our Wi-Fi went back up after about five to ten minutes, and so we probably wouldn't have had to proceed on my cell, but I thought it worked out okay. Yeah, no, it certainly did, and we could hear you just fine, which was really helpful. Okay. Oh. I apologize. I turned my camera down. I'm here. I'm reporting for duty, Judge Lucero. Never. Okay. Okay. One more bite, and we're ready to go. All right. Ready? Okay. Here they come. The Honorable Judges of the United States Court of Appeals for the Tenth Circuit. We are back in session. Thank you. I'm glad we could get you back, Ms. Holyoak. Oh, I'm sorry. I apologize if it was me. I don't know what happened. No, no, no. That's just the way it goes in cyberspace. I'm not sure. Oh, Judge Phillips, I think you're muted. Okay. I think where we left off, as I was asking, I'm trying to figure out where your line is, and where you left off, I think you were saying anything, any case that involves ineffective assistance that disposes of the case, whether you don't get an appeal, or you're going to plead guilty, or you could have pled guilty, and now you don't get to plead guilty. But anything that involves those, the law is clearly established, even if they're different facts or whatever else. But anything like this defendant that are just a step along the way, who's going to decide that, that those are not clearly established. Is that your position? Yes, and I mean, I maybe would restate it just slightly differently. In cases regarding where the plea bargain and then gave up the right to the jury trial, Hill is clearly established in that circumstance. In cases where the appeal was forfeited because of ineffective assistance, then Loeffler clearly applies in that circumstance. And in cases, or that was for Zortico, I apologize. In Loeffler, where a plea bargain was given up and went to trial, and the outcome would have been better, then that case, Loeffler is clearly established in that circumstance. And in those circumstances, yes, and you can imagine a variety of factual arguments relating to each of those circumstances that could come under those clearly established precedents. So you are not then indicating that you should, from those three cases, draw a lowest common denominator principle about where the proceeding is forfeited. That principle drawn from those three cases becomes clearly established law. And to follow up, Adam, even if you were doing that, I take it it would be your position, we don't even have that here. We don't, exactly. Even if we could do that and glean some sort of general standard from those three cases, and I don't know what it would be, particularly because under House v. Hatch, we need on point, narrowly construed holdings. But here, if we could glean that, the one that they have cobbled together, it falls apart. Because the idea that it applies only to decisions for defendants, that doesn't work. Because Strickland applies to right to testify. The idea that it's fundamental rights doesn't work, because even here, jury sentencing is not a fundamental right, it's a statutory right in Utah. If we were looking at this through the lens of ineffective counsel, and the argument, then the question was, was counsel ineffective, and therefore should we reverse for ineffectiveness of counsel in failing to argue clearly evident Supreme Court cases, Flores, Ortega, and Lafler, that had been decided at the time of the presentation of the case to Utah? Would that be a different result, in your mind? That they were ineffective because they did not, and I won't answer your question with a question. Were they? Yes. Well, no, because it wasn't clearly established, so their failure to do so was not unreasonable, would not be objectively unreasonable. Those cases don't really establish the law. The defendant's counsel would argue, hey, we weren't ineffective, we made the argument, we just are country lawyers, and our supplement hadn't come in, and we didn't realize the Supreme Court was refining its ruling in Hill by more specific applications. But even there, there is no general standard or legal controlling principle that it would have been objectively completely unreasonable for them to not put that in front of them. All right. And now the other question I have for you is, so now you're sitting in my chambers and we're writing the decision. How are we going to write the decision? Are we not going to acknowledge the fact that Flores Ortega and Cooper would lead us to a different result? Are we just not going to talk about it, pretend we're sort of dumb? Or are you going to say, let's write it in such a way that we acknowledge it, but say these are unreasonable applications by the Supreme Court of Hill? Or how would you write the opinion for us? I don't think they would lead you to a different result. I think under either theory, that under Hill, it's not clearly established that this Hill prejudice standard applies to jury sentencing waivers. Under this cobbled together rule from those three cases, common denominator, it is not clearly established that whatever general rule comes up applies. So your best argument, that is, all this time this morning, almost an hour, has been wasted because you're saying that Hill, Flores, and Loeffler don't stand for the proposition that Mr. Zuckerman is claiming. Correct. That is correct, Your Honor. And even if it did, even if we were to assume that it did, that it was clearly established, he still fails. Because under Hill, it's not just, it was this insistence that he would have to go to, that he would have picked a jury over a judge, is necessary but insufficient. And here, Mr. Honey said, I would have picked a jury because I didn't understand the difference. But the state Supreme Court said, no, you did understand the difference. We looked at the colloquy between the judge and you. You understood the difference. So that, the insistence that he would have proceeded with a jury falls apart there. And secondly, as we know under Hill, Hill says, that's, it's necessary but insufficient. We're still going to look at outcome of the trial. We're still going to look at, the prejudice inquiry still requires us to look at the evidence that would have gone to trial. And here, we have a judge that said, putting someone to death is the last thing a judge wants to do. We have a very heinous crime that the jury had already heard. So the state court found that it was objectively reasonable to go in front of a judge, a trained jurist, who would have dispassionately taken maybe a more dispassionate view of the facts. And those two cases together, together with the fact that the insistence of a jury falls apart under the state Supreme Court's finding, which under 2254 is presumed correct unless there's clear and convincing evidence to the otherwise, and there is not. Thank you, counsel. Thank you. Your Honor, the Utah Supreme Court accepted as true that Mr. Hone asked his counsel to withdraw his waiver, and his counsel refused to do so. It assumed it. It assumed it. It didn't accept that as true as the fact finding did. For the purposes of adjudicating the claim, it assumed that that fact was true. Furthermore, Mr. Hone has put forward sworn evidence that was unrebutted by both trial counsel, who gave an affidavit to the state, and in his affidavit mentions nothing about, did not rebut Mr. Hone's sworn affidavit that he attempted to withdraw his jury waiver. That is sufficient to meet his burden under Hill. That he attempted to withdraw his jury waiver is sufficient under Hill. If there was overwhelming evidence against him, why doesn't Hill require an inquiry as to whether it's reasonable to assume that that different change would have taken place? I mean, that a different decision would have been made? It is reasonable, and I think you can look to the affidavit. So what Hill requires is to look at the evidence in the record to determine whether there is a reasonable probability that the defendant would have exercised the right. Here where we have a sworn affidavit of Hone that is unrebutted by evidence from the state that he, in fact, attempted to exercise the right, he meets his burden under Hill. If I may just address, we've been talking a lot about Strickland and about Hill. I think that it's important to look to the language in Hill where it talks about Strickland. Hill is an application of Strickland. It's not a new standard. At 58 to 59, it says, we hold, therefore, that the two-part Strickland v. Washington test applies the challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in Tollett v. Henderson. And then it goes on to say the second prejudice requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. What Hill is doing is looking at the language of Strickland, which says that you have to show that the result of the proceeding would have been different. It's important to recognize that Strickland did not say that for all ineffective assistance of counsel claims, you need to look to whether the trial or sentencing would be different, but instead use the word proceeding. And that's why Hill is a natural application of Strickland. On that point, what about Ms. Holyoake's carving knife, where she says, fine, got all of those cases that you have cited. Strickland was for outcome, and now we have pleas and we have appeals, and they're over on this side. You're not on that side. Instead, you're something different. You're something along the way. You're not ending the case with a plea or an appeal. You're just one step in the process, which is, do I have a judge or a jury decide death? That's different. And because it's different, you don't have clearly established law. What's wrong with that? There's nothing in any of those cases that talk about ending the proceeding. That is an argument that by nature, if you plead, that's the end of the case. If you don't appeal, that's the end of the case. I don't want a jury. I want you, Judge, to decide if I'm going to get the death penalty. You go to court the next day. I think you look at Rattler, where the defendant forfeited his right to plead guilty, to accept the state's offer. And in that case, went to trial and was convicted after a fair trial, and the court found that it still did not matter, and that he was still entitled to relief after demonstrating that he could meet the federal prejudice analysis. This is not about the end of the case. It's about whether a fundamental right is forfeited. And that's the principle that you have drawn out of three cases. Why is that consistent with what we said in House v. Hatch? Why is that consistent with what we said in Littlejohn v. Trammell, which I've got up right now, in which the petitioner tried to do exactly the same thing? They took three or so Supreme Court cases and said, let me tell you what the general principle is out of these three cases. And that principle is clearly established law, and we said you can't do that. That's different than what Judge Phillips alluded to with Kerry v. Muggleton, where, yes, there was a principle to come out of that one case that would apply in that sort of situation. This is a different thing. So why aren't you running head up against that principle, that you can't do that? I'm sorry. In Flores v. Ortega, where the Supreme Court explicitly said that it broke no new ground to apply this prejudice standard to a claim that had never— We talked about different fact patterns, and you aren't answering my question. The point was different fact patterns, different context. We said clearly that clearly established law means you cannot draw out a general principle from different fact patterns and say this is what the law is. The law, as clearly established by Lassler, is that what Lassler says is like the decision whether to appeal, the decision whether to plead guilty rested with the defendant, and that is why it broke no new ground to apply it. So the clearly established law from Lassler dictates that when you're talking about enumerated rights under Jones v. Barnes that rest with the defendant alone, it is clearly established that the Hill prejudice analysis applies to that class of— Did either one of those three cases use fundamental rights that are reserved to the defendant alone? The language in Lassler says, quote, rested with the defendant. Like the decision whether to plead guilty, i.e. waive a trial, it rested with the defendant. Fundamental rights, that formulation that you are alluding to now, where does that appear in—it certainly doesn't appear in Hill, does it? It appears in Jones v. Barnes, which these cases cite to, and which Lassler— Oh, we're now introducing another case to create clearly established law? I thought you said all these three cases, different fact patterns, different concepts, give us clearly established law. Now where's Jones coming from? Well, as I said at the beginning, and I see my time is about to expire, if I could just answer Judge Holmes. Oh, yes, please. Thank you. In Flores-Ortega, the discussion of these rights that are reserved to the defendant, the reference there is to the rights that are reserved to the defendant, which have already been enumerated by the Supreme Court in Jones v. Barnes. There are a narrow class of rights, and Jones v. Barnes has explained that they are fundamental. So when the court in Flores-Ortega references that class of rights, and that is why it is appropriate to apply this standard to the facts in Jones in Flores-Ortega, it is because of the fundamental rights that are announced in Jones v. Barnes. Can I ask one quick follow-up? Yes, yes, please. What do you do with the argument that the jury trial in Utah is not? It's a statutory right. In Utah, there is both a statutory and a constitutional right to a jury sentencing. Is that right? Sure. Ring and Apprendi had been decided at the time that Homey's conviction was final and direct appeal. But furthermore, the nature of the right was fundamental in Utah. Under the statute, the right could not be waived without a knowing and voluntary waiver on the record by the defendant. Therefore, it fell within the same category of rights. And the U.S. District Court even recognized the fundamental nature of both the trial and sentencing are equivalent. So we believe that the capital sentencing trial in Utah at the time of Homey's sentencing was absolutely a fundamental right as evidenced by the fact that there needed to be a full knowing and voluntary waiver on the record. All right. I think unless my colleagues have further questions. Ms. Holly, if we gave counsel two minutes, you take 30 seconds or so for any parting thoughts. I have no further thoughts unless there are any other questions. We'll rest on our papers. Very well. Thank you very much. The case is submitted. Counsel are excused.